```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                              Criminal Action No. 2:16-cr-00022

**JOSEPH SCOTT COOPER**

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is defendant Joseph Scott Cooper's, <u>pro se</u>, motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), filed on August 2, 2023. ECF 102. Also pending is defendant's <u>pro se</u>, motion for counsel, filed on the same date. ECF 103.

I.  Factual Background

On March 14, 2016, the defendant pled guilty to Count III of a four-count indictment returned against him. Pursuant to his plea, he was convicted of knowingly and intentionally possessing with intent to distribute 50 grams or more of a substance containing a detectable amount of methamphetamine, a Schedule II controlled substance in violation of 21 U.S.C § 841(a)(1). ECF 31-32.

According to the presentence investigation report, Mr. Cooper "was involved with numerous other in the shipment of distribution amounts of methamphetamine through the U.S. Mail and distribution of methamphetamine and other controlled substances in West Virginia."  ECF 87 at ¶ 87.  Mr. Cooper shipped the controlled substances to West Virginia and proceeds were returned to Mr. Cooper, often through the U.S. Mail.  Id.  The defendant received a three-level enhancement for his leadership role in the offense.  ECF 87 at ¶ 124.  The defendant also received a two-level enhancement as the offense involved the knowing importation of methamphetamine.  Id. at ¶ 122.  Finally, the defendant received a three-level diminution as he accepted responsibility for the offense and notified authorities of his intention to enter a guilty plea.  Id. at ¶¶ 128, 129.

At his sentencing on January 19, 2017, the court found Mr. Cooper's total offense level for Count III to be 38 with a criminal history of IV yielding a guideline range of 324 to 405 months.  See Judgment Order entered January 27, 2017, ECF 86 at 1.  The court then sentenced the defendant to a total of 168 months imprisonment.  ECF 85 at 1.

On November 23, 2020, defendant sent a letter to the court seeking "the removal of the SUPERVISOR role enhancement so

2

that [he] might benefit from the 'First Step Act.'" ECF 91. The court denied the motion. ECF 90.

On November 8, 2021, defendant sent another letter to the court, seeking the appointment of counsel "due to the Drug Reform Act and the promise that it will reduce [his] sentence according to the change of penalty with regards [sic] to the methamphetamine charge [he] was sentenced under." ECF 92. The court denied his motion as defendant failed to show that the appointment was necessary but encouraged him to file a motion himself if he had grounds to seek a sentence reduction. ECF 93.

Currently before the court is the defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 102.

## II. Legal Standard

Generally, once a court has imposed a term of imprisonment, it lacks the authority to modify the sentence. 18 U.S.C. § 3582(c). In December 2018, Congress enacted the First Step Act, which amended 18 U.S.C. § 3582 and enabled courts to reduce a term of imprisonment under certain circumstances. First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239.

3

As amended, § 3582 provides that after satisfying an administrative exhaustion requirement,[1] courts may reduce a sentence if (1) "extraordinary and compelling reasons warrant such a reduction," (2) "reduction is consistent with the applicable policy statements issued by the Sentencing Commission," and (3) release is consistent with the factors listed under 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

"[T]he district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." United States v. Jenkins, 22 F.4th 162, 169 (4th Cir. 2021). However, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" United States v. Taylor, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)).

The Policy Statement is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G. § 1B1.13. Amendments to the Policy Statement took effect on November 1, 2023, which made it expressly applicable to

---

[1] The record reflects that Mr. Cooper requested compassionate release from the warden of his prison facility. See ECF 102-1 at 2.

defendant-filed motions under § 3582(c)(1)(A).  A court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions.  18 U.S.C. § 3582(c)(1)(A).

The Policy Statement identifies six circumstances, individually or collectively, that constitute "extraordinary and compelling reasons" warranting a reduction in sentence.  These include: the defendant is suffering from a terminal illness or has another serious medical condition, § 1B1.13(b)(1); the age of the defendant, § 1B1.13(b)(2); the family circumstances of the defendant, § 1B1.13(b)(3); the defendant was a victim of abuse during imprisonment, § 1B1.13(b)(4); the defendant received an unusually long sentence and has served at least 10 years of the imprisonment, § 1B1.13(b)(6); or for "any other circumstance or combination of circumstances that ... are similar in gravity" to the reasons in (1)-(4).  § 1B1.13(b)(5).

### III. Analysis
#### A. Conditions of Confinement

Mr. Cooper argues that the conditions of confinement at Sheridan Federal Correctional Institute ("FCI") constitute "[t]he major factor [underlying his] ... request [for] ... a reduction is sentence."  ECF 102 at 1.  He proceeds to list many

5

pandemic-related incidents of shortages of staff, plumbing malfunctions, and long periods of lockdown conditions, amongst other issues.  Id. at 1-2.  Attached to his motion is a newspaper article describing inmate accounts of alleged abuse at FCI Sheridan, see ECF 102-1 ("Exhibit A"), and a letter from Senators Ron Wyden and Jeffrey A. Merkley to Lisa Monaco, Deputy Attorney General, and Kiran Ahuja, Director of the U.S. Office of Personnel Management, concerning "understaffing and low pay at ... [FCI] Sheridan..." ECF 102-1 at 1 ("Exhibit B").

  The court finds that Mr. Cooper's conditions of confinement grounds fails to identify "extraordinary and compelling" reasons to grant compassionate release.  With regard to his claim that compassionate release is warranted due to the conditions of confinement at Sheridan FCI, such conditions "generally should not be challenged through a motion for a reduction in sentence."  United States v. Kellam, No. 5:06-CR-00041-7, 2024 WL 477023, at *3 (W.D. Va. Feb. 7, 2024); United States v. Fleming, No. CR 2:18-00141, 2022 WL 597529, at n.4 (S.D.W. Va. Feb. 28, 2022)(detailing that "an appropriate mechanism for ... a challenge to the conditions of one's confinement is a claim under Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), or

motion for habeas corpus relief pursuant to 28 U.S.C. § 2241" in the district of incarceration).

### B. Medical Claims

Mr. Cooper maintains that his suffering from the continuing adverse effects of contracting COVID-19 and unspecified mental health conditions, for which FCI Sheridan "is not willing to provide him" medical treatment, constitute "extraordinary and compelling" reasons for release. ECF 102 at 5. Further, he asserts that his heart condition, a bundle branch blockage of his heart's left ventricle, renders him a "high risk" patient if he were to contract COVID-19 again.[2] Id.

With regard to his COVID-19 related claim, courts have found "extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020); see United States v. High, 997 F.3d 181, 185 (4th Cir. 2021) ("The underlying arguments for release from prison based on the

---

[2] Mr. Cooper states that "[w]ith his heart condition and the threat of contracting COVID-19[,] the results could be deadly." ECF 102 at 5.

coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical conditions increases that individual's risk of experiencing a serious or even fatal, case of COVID-19.").

While it is plausible to conclude that Mr. Cooper's underlying medical conditions may increase his risk of experiencing serious illness should he contract COVID-19, the court finds he has failed to establish that he now has a particularized risk of contracting COVID-19 at his prison facility.  As of May 3, 2024, the Bureau of Prisons reports there is a total of 0 confirmed open cases of COVID-19 amongst the inmates at FCI Sheridan and 55% of inmates are inoculated against the virus.  BOP COVID-19 Statistics, BOP, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last visited May 6, 2024).  Given these numbers, the court finds Mr. Cooper has failed to establish extraordinary and compelling reasons that warrant compassionate release based on concerns arising from potential future exposure to COVID-19.

With regard to his other maladies, Mr. Cooper also fails to carry his burden.  He does not specify what mental health conditions he has or provide any evidence to support his

heart condition or how FCI Sheridan has not attempted to treat those conditions. The same goes for his ongoing COVID-19 symptoms. Mr. Cooper has provided the court with no evidence to support his contention that he is receiving insufficient or nonexistent medical care. See United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021) ("[T]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction."); United States v. Davis, 581 F.Supp.3d 759, 763 (E.D. Va. 2022).

### C. Family Circumstances

Mr. Cooper avers that he is the only potential primary caregiver to his father, eighty-one years of age with dementia, and his mother, seventy-five years of age and "[too] old to properly take care of her husband." ECF 102 at 5.

United States Sentencing Guidelines § 1B1.13(b)(3)(C) provides extraordinary and compelling reasons exists through "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." Mr. Cooper avers that, were he to be released, he would provide his "two elderly parents ...with the home care they both desperately need" including "providing hot meals, taking care of

daily house chore[s], driving them to medical appointments as well as snow removal and yard care." ECF 102 at 5. He states that his position as the "only potential primary caregiver" constitutes an "extraordinary and compelling circumstance [warranting] a compassionate release." Id. (internal quotations omitted).

Generally, compassionate release based on family circumstances has "only been granted where a defendant is the sole available caregiver for his or her ... closely related and incapacitated adult." United States v. Burrough, 2022 WL 2318512, at *5 (W.D.N.C. June 28, 2022); see also United States v. Allen, No. 4:13-CR-00024, 2021 WL 3025458, at *3 (W.D. Va. July 16, 2021) (stating that some courts have found extraordinary and compelling grounds where defendant demonstrates that "(1) a parent is incapacitated and (2) the defendant is the only possible caregiver for that parent"); United States v. Snyder, No. 7:14-CR-27, 2023 WL 3467221, at *3 (W.D. Va. May 15, 2023) (denying compassionate release to defendant in part because the record did not support the allegation that defendant was the sole potential caregiver for her elderly and ailing mother). In seeking compassionate release, prisoners bear the burden of establishing "extraordinary and compelling reasons" exist to warrant a

sentence reduction. Newton, 996 F.3d at 488; Davis, 581 F.Supp.3d at 763.

In this instance, Mr. Cooper has not shown such reasons exist entitling him to compassionate release based on family circumstances. Mr. Cooper has failed to present evidence that no other suitable caregivers exist to care for his parents. The presentence report details that Mr. Cooper has one sister, approximately 52 years of age who resides in Asheboro, North Carolina, in the same city as his parents. ECF 87 at ¶ 162. The report further details an uncle and cousin who live in Lincoln County, West Virginia. Id. at ¶ 163.

### D. Rehabilitation

Mr. Cooper next contends that a reduction in his sentence is warranted due to his "incredible amount of programming throughout his duration in the BOP," which he reports includes educational and wellness courses, drug education classes, and that he is currently on the waitlist to participate in the RDAP program. ECF 102 at 5. Mr. Cooper highlights that he is considered "low recidivism" by the Bureau of Prisons, and that pursuant to his proposed "comprehensive re-entry plan," he "poses no danger to the community as he is a

11

non-violent offender" and will be released into the home of his parents in North Carolina, who will "ensure a safe, stable, but most importantly of all a sober living environment." Id.

While the court takes note of Mr. Cooper's rehabilitation efforts while incarcerated, rehabilitation alone may not serve as a basis for compassionate release. McCoy, 981 F.3d at 286, n. 9; Davis, 2022 WL 127900; 28 U.S.C. § 944(t). Accordingly, the court finds the generally commendable conduct reported by him while incarcerated does not constitute extraordinary and compelling reasons warranting compassionate release.

Regarding his argument about his status as a "low recidivism" offender and that he poses "no danger to the community as he is a non-violent offender," the nature and circumstances of Mr. Cooper's countenance otherwise. Mr. Cooper's offense involves his possession with the intent to distribute 50 or more grams of methamphetamine. ECF 87 at ¶ 6. This conduct reflects his danger to the community. See United States v. Henry, 2021 WL 5566770, at *4 (W.D.N.C. Nov. 29, 2021) (denying compassionate release of defendant convicted of possession with intent to distribute 50 grams of more of methamphetamine, holding that the defendant "is a threat to society and the community" as methamphetamine "is one of the

12

most dangerous drugs prosecuted in [the] district"). Further, Mr. Cooper has an extensive criminal history spanning nearly twenty years, with many incidences of violations of the terms of his supervised release. ECF 87 at ¶¶ 132-139. Affording him an early release would not adequately protect the public from potential subsequent drug offenses. See United States v. White, No. 1:12-CR-309, 2023 WL 5510306, at *4 (E.D. Va. Aug. 24, 2023) (denying compassionate release in part because "[t]he need for deterrence and to protect the public from further crimes outweighs any purported rehabilitation" on the part of the defendant, who had an extensive criminal history).

### E. § 3553(a) Factors

Lastly, Mr. Cooper argues all six of the factors listed in § 3553(a) support granting compassionate release. ECF 102 at 3-4. Inasmuch as Mr. Cooper has failed to establish extraordinary and compelling reasons under § 3582(c)(1)(A)(i), the court need not address whether release would be consistent with the factors set forth in § 3553(a).

### IV. Conclusion

In light of the foregoing, the court DENIES Mr. Cooper's motion for compassionate release, and DENIES his motion for appointment of counsel.

The Clerk is directed to transmit copies of this order to the defendant, all counsel of record, the United States Probation Office, the United States Marshal, and to the Federal Bureau of Prisons.

ENTER: May 9, 2024

John T. Copenhaver, Jr.
Senior United States District Judge